UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
VINCENT LONGO,

                        Plaintiff,                   **COMPLAINT**

          -against-                  **JURY TRIAL DEMANDED**

SERGEANT FREDERIC ORTIZ,
DETECTIVE ANTHONY MANUZZA,
and UNIDENTIFIED POLICE OFFICERS
in their capacity as individuals,

                        Defendants.
-----------------------------------------------------------------X

      Plaintiff, by his attorney, Fred Lichtmacher of the Law Office of Fred

Lichtmacher, P.C, complaining of the defendants herein, respectfully alleges as follows:

## JURISDICTION AND VENUE

1.  Jurisdiction is founded upon the existence of a Federal Question.

2.  This action arises under 42 U.S.C. §§ 1983 & 1988 and the Fourth, Sixth and

Fourteenth Amendments to the United States Constitution.

3.  Subject matter jurisdiction is conferred by 28 U.S.C. §§ 1331 & 1343 (a)(3 & 4).

4.  Pursuant to 28 U.S.C. § 1391(b)(2), venue is proper in the Southern District of New

York because the events forming the basis of the Complaint occurred in this District.

5.  This claim is brought pursuant to the Fourth, Sixth and Fourteenth Amendments for

malicious prosecution and denial of Mr. Longo's right to a fair trial as made applicable to

the states via the Fourteenth Amendment.

## PARTIES

6.  At all time relevant, Vincent Longo was a resident of  NewYork County in the City

and State of New York.

7.   Defendant Police Officers Sergeant Frederic Ortiz Shield # 7082 , Detective Anthony Manuzza Shield # 4753 as well as Unidentified Police Officers, were at all times relevant working out of Manhattan South Narcotics, the 6th Precinct of the NYPD and they are sued herein in their capacity as individuals.

8.   At all times relevant the defendants were acting as employees of the NYPD and acting within the scope of their employment under color of law.

9.   The defendants herein are liable for directly participating and/or failing to intervene to prevent the acts described herein.

### Statement of Facts

10.   On October 12, 2010 at approximately 5:45pm  Vincent Longo was walking along Bleecker Street with some acquaintances and his dog.

11.   The defendants, plain-clothes police officers, without observing the criminal activity they would later allege Mr. Longo had committed, followed Mr. Longo to his home at 167 Bleecker Street in Manhattan.

12.   Mr. Longo stopped in front of his apartment building to say goodbye to his acquaintances and he put his key into his front glass door.

13.   Without probable cause, reasonable suspicion, nor an announcement of who he was, and without his shield being displayed, plain clothes officer defendant Frederic Ortiz lunged and grabbed Mr. Longo's arm in an apparent attempt to restrain him and his acquaintance while they both were standing in front of Mr. Longo's front door.

14.   Startled by the event and not knowing who the defendant was, Mr. Longo quickly stepped into his building and slammed his front glass door closed.

15.   Mr. Longo glimpsed at the defendant through the glass door and saw him pointing a gun at Mr. Longo; he still was not displaying his shield nor had he yet identified himself as a police officer.

16.    In fear for his life, Mr. Longo ran farther into his apartment building to escape the yet unidentified gunman.

17.    The defendant, for no legitimate law enforcement purpose, seemingly lost his temper and physically crashed through Mr. Longo's front glass door and frantically chased him into his building.

18.    Mr. Longo continuously screamed for help in an attempt to alert his neighbors to the presence of the defendant gunman in the apartment building.

19.    The defendant chased Mr. Longo up to his apartment on the third floor.

20.    Mr. Longo's dog, who was running with him, stopped in front of his apartment door at which time the defendant threatened to shoot the dog, which stood only inches away from Mr. Longo.

21.    Mr. Longo ran into his home and the defendant continued to give chase; still not identifying himself as an officer.

22.    As Mr. Longo attempted to close his door behind him, the defendant jammed his 9 mm gun into Mr. Longo's doorway.

23.    Mr. Longo screamed for help and desperately tried to prevent the gunman from entering his home by pushing his apartment door closed.

24.    In desperation, Mr. Longo pressed his palm against the barrel of the defendant's gun in order to push it out of the doorway and close the door.

25.    The defendant, with the help of other defendants who had joined him, stuck other items, including a black radio, into Mr. Longo's doorway in an attempt to gain access to Mr. Longo's home, still without identifying themselves as officers.

26.    In desperation, Mr. Longo pulled the black object from the doorway in order to close the door and prevent the defendant gunman from entering his home.

27.     After succeeding in closing his apartment door, Mr. Longo looked at the black object and realized that it was a police radio, and for the first time, Mr. Longo realized that the defendants, none of whom had as of yet bothered to identify themselves, must have been police officers.

28.     Mr. Longo went to his window and saw a large number of police officers with guns drawn outside of his apartment building and Mr. Longo realized he had to surrender to the police.

29.     In fear for his life from the officers outside of his apartment door who had acted so recklessly and aggressively, Mr. Longo wanted third-party witnesses to his surrender.

30.     Mr. Longo decided to surrender to the officers outside of his building standing below his window, instead of to the unduly aggressive officer who had crashed through his glass door, threatened to shoot his dog and pulled out a gun; all for no discernible reason.

31.     Mr. Longo climbed onto his fire escape and communicated to the police below that he would be lowering the fire escape ladder to climb down to the sidewalk.

32.     Mr. Longo surrendered himself to the police.

33.     Once on the sidewalk, the defendant officers ripped open Mr. Longo's clothing in front of a crowd of onlookers and neighbors.

34.     Once processed at the police station, defendants falsely charged Mr. Longo with Attempted Criminal Possession of a Weapon in the 2nd Degree, Assault in the Second Degree, Criminal Mischief in the Second Degree, Robbery in the Third Degree, Attempted Robbery in the Third Degree, Reckless Endangerment in the Second Degree, Criminal Possession of a Controlled Substance in the Seventh Degree and Unlawful Possession of Marijuana.

35.     The acts alleged by the defendants were fabricated in order to justify the bad stop, seizure, illegal search, recklessly destroying property by crashing through a glass door and having drawn a gun without any legal justification.

36.     Immediately after his arrest, the defendants swore to and signed a search warrant affidavit based on information they fabricated, which a Supreme Court judge approved and signed.

37.     The defendants executed the search warrant and tore through Mr. Longo's family's home.

38.     Mr. Longo was incarcerated for approximately two weeks before being released on bail.

39.     The defendants provided false information to the District Attorney leading to the criminal charges Mr. Longo was wrongfully accused of committing.

40.     The defendants provided false testimony against Mr. Longo during the Manhattan District Attorney's grand jury presentation in order to indict Mr. Longo.

41.     After a grand jury heard the fabricated evidence presented by the defendants and District Attorney's Office, the jury panel voted to indict Mr. Longo for Robbery in the Third Degree, Attempted Robbery in the Third Degree and three counts of Attempted Assault in the Second Degree.

42.     During the pre-trial hearings, defendants Unidentified Police Officers harassed one of Mr. Longo's primary witnesses by temporarily seizing and searching the witness on the street.

43.     During the illegal stop and frisk the defendants commented that it was a "big day" for the witness who was scheduled to testify later that day.

44.     During the pre-trial hearings and jury trial, the defendants gave false testimony in an attempt to convict Mr. Longo of all the aforementioned felony charges.

5

45.     On June 17, 2015, five (5) years after Mr. Longo's ordeal began, he was given an opportunity to confront the defendants in court and to rebut the false charges they caused to be brought.

46.     On July 22, 2015, after over a month long pre-trial hearing and jury trial, Mr. Vincent Longo was acquitted of all the charges on the aforementioned indictment.

### FIRST CLAIM FOR RELIEF
### ON BEHALF OF VINCENT LONGO
### MALICIOUS PROSECUTION

47.     Plaintiff repeats the allegations contained in the prior paragraphs as if fully stated herein.

48.     Vincent Longo was subjected to a malicious prosecution by the defendants who caused and continued his arrest, without probable cause, nor a reasonable suspicion he had committed the crimes alleged, his arrest was effected with malice and the charges terminated in Mr. Longo's favor after hearings and ultimately a jury trial acquittal.

49.     Mr. Longo's rights have been violated under the Fourth Amendment of the United States Constitution pursuant to 42 U.S.C.§1983, in that he was maliciously prosecuted by the defendants.

50.     The  malicious prosecution was initiated by the defendants, their agents, servants and employees, without any legal justification and without probable cause in that the defendants caused the commencement and continuation of criminal proceedings against Mr. Longo, the proceedings terminated in his favor via an acquittal on all charges and in that the action was commenced and continued intentionally and with malice and deliberate indifference to Mr. Longo's rights.

51.   By reason of the unlawful malicious prosecution, Mr. Longo was subjected to pecuniary harms, great indignities, humiliation, anxiety, he was forced to spend time in jail as well as being forced to make numerous forced court appearances, he lost time at

work, he was searched, stip searched, handcuffed, he was separated from his family and he was subjected to numerous other harms.

52.    The indictment of Mr. Longo was secured by the suppression of exculpatory evidence and by dishonest statements made by the defendants to the prosecutor as well as to the grand jury which were revealed prior to trial resulting in the dismissal as well as by other acts of misconduct committed by the defendants.

53.    All of the defendants who knew of the commencement and continuation of the malicious prosecution of the plaintiff; the hiding of exculpatory evidence; the undue influence applied to a witness; and/or the misrepresentations about the acts committed in the alleged crimes, are liable to Mr. Longo via their failure to exercise their affirmative duty to intervene.

54.    Defendants Unidentified New York City Police Officers who are supervisors within the defendant NYC's Police Department, who knew of the malicious prosecution; the hiding of exculpatory evidence; the undue influence applied to a witness; and/or the misrepresentations about the acts committed in the alleged crimes, and who continued to allow and/or participate in the prosecution of Mr. Longo and who either directly participated in the violation of his rights or who after learning of the violation failed to remedy the wrong are liable to Mr. Longo for violating his rights pursuant to the Fourth Amendment.

55.    Defendants' actions resulted in Vincent Longo being arrested, handcuffed, held in custody beginning on October 12, 2010 and lasting for approximately two weeks, he was forced to appear in court repeatedly for five (5) years, he lived in fear of going to jail, he experienced anxiety, he was defamed in his community, he incurred pecuniary harms including but not limited to attorneys' fees, he lost time at work, he was precluded from conducting his necessary affairs of business, he was unable to leave New York State and

even New York City to attend family functions due to his constant court appearances and he was otherwise harmed.

56.     The individual defendants acted intentionally, willfully, maliciously, negligently and with reckless disregard for and deliberate indifference to Mr. Longo's rights.

57.     By reason of the aforesaid, Vincent Longo, has been damaged and is entitled to compensatory damages in the amount of FIVE HUNDRED THOUSAND ($500,000) DOLLARS and punitive damages in an amount to be determined by the trier of fact and attorneys' fees are appropriate pursuant to 42 U.S.C. § 1988.

**SECOND CLAIM FOR RELIEF**
**ON BEHALF OF PLAINTIFF VINCENT LONGO**
**FOR DENIAL OF A FAIR TRIAL**

58.     Mr. Longo repeats the allegations contained in the prior paragraphs as if fully stated herein.

59.     Vincent Longo was denied the right to a fair trial, in essence, denying him of his Fourth, Sixth and Fourteenth Amendment rights, when the defendants fabricated evidence, gave false testimony, and made false extrajudicial statements to the Manhattan District Attorney's Office to be used against Mr. Longo at trial as well as to a Supreme Court judge in an effort to secure a search warrant, indictment and conviction against Mr. Longo who had not committed the crimes alleged.

60.     In effect the defendants were investigating officials, who fabricated evidence that was likely to influence the jury's decision, they forwarded that information to prosecutors, and the plaintiff suffered a deprivation of liberty as a result.

61.     Defendants' actions resulted in Mr. Longo spending approximately two weeks in jail, a five (5) year prosecution of Vincent Longo which forced Mr. Longo to appear in court repeatedly for five (5) years, he lived in fear of going to jail due to the false charges, he experienced anxiety, he was defamed in his community, he incurred

pecuniary harms including but not limited to attorneys' fees, he was prevented from pursuing his necessary affairs of business and he was otherwise harmed.

62.     The individual defendants who knew of the violations of Mr. Longo's rights  and who failed to intervene to prevent his constitutional rights from being violated are liable to Mr. Longo as are the defendants who directly participated in his prosecution.

63.     The individual defendants acted intentionally, willfully, maliciously, negligently and with reckless disregard for and deliberate indifference to Mr. Longo's rights, physical well-being and mental well-being.

64.     By reason of the aforesaid, Vincent Longo, has been damaged and is entitled to compensatory damages in the amount of FIVE HUNDRED THOUSAND ($500,000) DOLLARS and punitive damages in an amount to be determined by the trier of fact and attorneys' fees are appropriate pursuant to 42 U.S.C. § 1988.


WHEREFORE, Mr. Longo respectfully requests that judgment be entered as follows:

(A)     Declaratory relief finding that Vincent Longo's rights under the United States Constitution were violated;

(B)     Mr. Longo be awarded Compensatory damages in an amount not exceeding FIVE HUNDRED THOUSAND ($500,000) DOLLARS;

(C)     By reason of the wanton, willful and malicious character of the conduct complained of herein, punitive damages against the defendants be awarded to Mr. Longo in an amount to be fixed at trial;

(D)     Mr. Longo be awarded costs and disbursements herein;

(E)     Mr. Longo be awarded attorneys' fees pursuant to 42 U.S.C. § 1988; and

(F)     For such other and further relief as this honorable Court may deem just and proper.

Dated: September 30, 2015
      New York, New York

                                                    / s /

                                            Fred Lichtmacher
                                            The Law Office of Fred Lichtmacher P.C.
                                            2 Wall Street, Suite 10th Floor
                                            New York, New York 10004
                                            (212) 922-9066
                                            *Attorneys for Plaintiff*

To:     Zachary Carter
         Corporation Counsel NYC
         100 Church Street
         New York, New York 10007